UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X
:
BRANDON COLE,
                              Plaintiff,          :          11 Civ. 2090 (DF)

              -against-                           :          **MEMORANDUM
                                                             AND OPINION**
JOHN WILEY & SONS, INC.; R.R. DONNELLEY          :
& SONS COMPANY; and JOHN DOES 1-10,
                                                 :
                              Defendants.
                                                 :
-----------------------------------------------------------------------X

**DEBRA FREEMAN, United States Magistrate Judge:**

In this copyright dispute, before me on consent pursuant to 28 U.S.C. § 636(c), plaintiff

Brandon Cole ("Plaintiff") has filed an Amended Complaint against defendants John Wiley &

Sons, Inc. ("Wiley") and Donnelley & Sons Company ("Donnelley") (collectively,

"Defendants"), and John Does 1-10 (the "John Doe Defendants"), asserting claims for copyright

infringement, fraud, and fraudulent inducement.  (*See* First Amended Complaint, dated Sept. 29,

2011 ("Amended Complaint" or "Am. Compl.") (Dkt. 31).[1])  Currently before the Court is a

motion brought by Defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

to dismiss all claims asserted against them.  (Dkt. 28.)  For the reasons discussed below, the

motion (Dkt. 28) is granted, and this action is dismissed in its entirety.

---

[1] Plaintiff did not have leave of Court (or Defendants' consent) to file the Amended
Complaint, and thus should have filed a motion for leave to amend under Rule 15 of the Federal
Rules of Civil Procedure.  Nonetheless, as Defendants have not objected to the amendment itself,
but rather have filed a Rule 12 motion against the amended pleading, the Court will deem the
Amended Complaint to have been properly filed and will proceed to consider Defendants'
motion.

## BACKGROUND

The facts set forth below, which are accepted as true for purposes of this motion, are taken from the Amended Complaint and the exhibits attached thereto, and from the contents of a license agreement between the parties (Invoice Memo No. 2331, dated Dec. 28, 2009 (the "License Agreement"), submitted by Defendants as Ex.1 to the Declaration of Ashima Aggarwal, Esq., dated Oct. 17, 2011 (Dkt. 30)).  While the License Agreement was not attached to the Amended Complaint, but rather was supplied by Defendants in connection with their motion, Plaintiff's pleading refers to and relies on the agreement's terms and effect (*see, e.g,* Am. Compl. at ¶¶ 50-58 (referring repeatedly to any "subsequent agreement" between the parties, which the Court understands to mean the License Agreement)), and the document is therefore appropriately deemed incorporated by reference in Plaintiff's pleading.[2]

### A.    Factual Background

Plaintiff is a professional photographer and a resident of the State of Washington.  (Am. Compl. at ¶¶ 1, 10.)  Defendant Wiley, a New York corporation with its principal place of business in New Jersey (*id.* at ¶ 2), is a publishing company in the business of creating,

---

[2] As Plaintiff was plainly aware of the License Agreement and referenced it in his own pleading, it is not necessary to convert this motion into a motion for summary judgment, in order to consider this document.  *See Amy Axelrod, Inc. v. Simon & Schuster, Inc.*, No. 07 Civ. 891(DLC), 2007 WL 2412257, at *3 (S.D.N.Y. Aug. 27, 2007) ("The necessity of transforming a Rule 12(b)(6) motion into a motion for summary judgment is 'largely dissipated' when the plaintiff is shown to have had actual notice of the document extrinsic to the complaint and to have relied upon the document to frame the complaint." (citing *Cortec Indus., Inc. v. Sum Holdings, L.P.*, 949 F.2d 42, 48 (2d Cir. 1991))); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (stating that, on a motion to dismiss, a court may consider, *inter alia,* documents incorporated in the complaint by reference, and "'documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit,'" as long as plaintiffs relied on the terms and effect of the document in drafting the complaint (citing *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993))).

publishing, marketing, and selling educational textbooks, instructional technology materials, reference works, travel books, and other similar materials and publications (*id.* at ¶¶ 11, 12). Defendant Donnelley, a printing company with various locations throughout the United States (*id.* at ¶ 4), was allegedly engaged by Wiley to print and produce certain of the publications at issue in this case (*see id.* at ¶ 14).  Defendants John Does 1-10 (the "John Doe Defendants") are unidentified printing companies, which Wiley allegedly also engaged to print and produce publications referred to in the Amended Complaint.  (*Id.* at ¶ 5.)

**1.     Defendants' Alleged Infringement of Plaintiff's Copyrights
in Five Specific Photographs Obtained by Wiley from Plaintiff**

Plaintiff claims to be the registered owner of copyrights in the following photographs (the "Five Photographs"):

1.     "Hammerhead Shark" (referred to in the Amended Complaint as "nf92," and "registered with the U.S. Copyright Office as part of Copyright Registration VAu 572-709") (*id.* at ¶ 82);

2.     "Manta Ray" (referred to in the Amended Complaint as "kg2066," and  "registered with the U.S. Copyright Office as part of Copyright Registration VAu 465-978") (*id.* at ¶ 83);

3.     "Moray Eel" (referred to in the Amended Complaint as "iy904," and "registered with the U.S. Copyright Office as part of Copyright Registration VAu 465-978") (*id.* at ¶ 84);

4.     "Common Dolphin" (referred to in the Amended Complaint as "qc71193,"and "registered with the U.S. Copyright Office as part of Copyright Registration VAu 972-919") (*id.* at ¶ 85); and

5.     "Humpback Whale" (referred to in the Amended Complaint as "mv131," and "registered with the U.S. Copyright Office as part of Copyright Registration VAu 510-870") (*id.* at ¶ 86).

3

Plaintiff claims that Wiley, at various times, infringed Plaintiff's copyrights in the Five Photographs, sometimes reproducing them without holding any valid license (*id.* at ¶ 32), sometimes reproducing them in types of publications that were not provided for under the terms of license agreements (*id.* at ¶ 43), and sometimes exceeding the print-run limitations of license agreements (*id.* at ¶ 74).[3]  Plaintiff's specific allegations as to Wiley's infringement of the Five Photographs are as follows:

### a.    Delivery Memo No. 3057

Plaintiff alleges that, on or around May 27, 2009, Cherie Cincilla ("Cincilla"), a Wiley photo editor, contacted Plaintiff to determine whether Plaintiff had any photographs that might fill Wiley's needs for a Costa Rica guide book that Wiley was planning to publish.  (*Id.* at ¶ 18.) Plaintiff claims that, on May 29, 2009, after Cincilla informed Plaintiff that Wiley was considering publishing the Five Photographs (and one other photograph) in the Costa Rica guide book and also stated to Plaintiff that Wiley's intended print run for this book was "20k," Plaintiff sent high-resolution digital versions of these six photographs to Wiley, so that Wiley could select photographs to use in the upcoming guide book.  (*Id.* at ¶¶ 22, 23.)  Plaintiff sent these photographs to Wiley with a delivery memorandum (Delivery Memo No. 3057 (the "Delivery Memo")), which, *inter alia,* listed each photograph's code and described the six photographs as "6 Marine Life for Costa Rica Day by Day Country Guide, 20k print run."  (*See id.* Ex. 1.) Plaintiff contends that the Delivery Memo did not actually grant Wiley permission to reproduce any of the photographs in any publication (*id.* at ¶¶ 25, 26), but rather stated that Plaintiff would

---

[3] A license agreement may provide for the number of copies of the copyrighted work that a publisher may print, a number which is referred to as the "print run."

grant such rights only upon his receipt of payment, in full, of an amount to be negotiated and invoiced (*id.* at ¶¶ 29, 31).

### b.   The Costa Rica 2010 Publications

Plaintiff alleges that, at some point after he issued the Delivery Memo, Wiley proceeded to publish the Five Photographs in its publication entitled *Frommer's Costa Rica 2010* (the "Costa Rica 2010 Book"), without having obtained the requisite license, without having paid the requisite license fees, and without having obtained Plaintiff's permission.  (*Id.* at ¶¶ 32-39.) Plaintiff further alleges that, although Wiley eventually requested a license to use the Five Photographs in the Costa Rica 2010 Book, Wiley did so only after it had already published these photographs in distributed copies of this book.  (*Id.* at ¶¶ 45-47.)  Plaintiff contends that, by publishing the Five Photographs in the Costa Rica 2010 Book without first having obtained a license to do so, Wiley infringed Plaintiff's copyrights in the Five Photographs.  (*Id.* at ¶ 43.)

### c.   The License Agreement

Plaintiff implicitly acknowledges that he eventually did enter into an agreement with Wiley to license the Five Photographs for use in the Costa Rica 2010 Book (*i.e.*, the "License Agreement" referred to *supra*, at 2), but contends that this was *after* Wiley had already published the photographs in that book.  (*See* Am. Compl. at ¶¶ 45-58.)  Plaintiff takes the position that this agreement was not retroactive and that, to the extent it was effective, it granted Wiley only the limited, prospective right to publish the Five Photographs in a "20k" print run of the Costa Rica 2010 Book that was to be distributed solely in North America.  (*Id.* at ¶¶ 53, 55.)

In this regard, the License Agreement states the following, in relevant part:

> **TERMS OF LICENSE** – Upon receipt of payment in full of $1100 USD, Cole Licenses FROMMER'S/WILEY AND SONS one time, non-exclusive editorial print reproduction rights to

> publish five (5) photos listed above once each in one printed
> version/edition only of a book titled "Frommer's Costa Rica 2010,
> by Eliot Greenspan" . . . .  Photos to be reproduced at sizes and
> positions as detailed above.  Print run:  20k copies.  Distribution:
> North America only.  Languages:  English only.  All other rights
> reserved.  Photo credit "Photo © www.brandoncole.com" to be
> included.  Advertising, promotion, internet, web, PDF, CD-Rom,
> e-book, archiving, and any other electronic or printed use are
> prohibited.  No republication or reprint rights granted.  No use by
> third parties.  Additional use of any kind whatsoever, in any media
> or by any means of distribution, requires an additional licensing
> fee – Please call us.

(License Agreement.)  Plaintiff does not suggest that Wiley failed to pay the $1,100 specified

under this agreement, but does allege that Wiley then exceeded any rights that may have been

granted to it under the agreement, by including the Five Photographs in more than 20,000 copies

of the Costa Rica 2010 Book (Am. Compl. at ¶ 54), by publishing them in copies of the Costa

Rica 2010 Book that were distributed outside of North America (*id.* at ¶ 56), and by publishing

them in international, internet, web, PDF, CD-Rom, e-book, archiving, and other electronic

versions of the Costa Rica 2010 Book (*id.* at ¶¶ 56, 58).

The License Agreement, which was apparently prepared by Plaintiff and which was

printed on "Brandon Cole marine photography" letterhead, also contains an arbitration clause,

which provides:

> Any dispute in connection with this stock picture invoice including
> its validity, interpretation, performance, or breach shall be
> arbitrated in Spokane, Washington pursuant to the rules of the
> American Arbitration Association and the laws of Washington.
> Judgment on the Arbitration award may be entered on the highest
> Federal or State Court having jurisdiction. Any dispute involving
> $1500.00 or less may be submitted, without arbitration, to any
> Court having jurisdiction thereof.  Client shall pay all arbitration
> and Court costs, reasonable Attorney's fees, plus legal interest on
> any award or judgment.

(License Agreement at ¶ 9.)  As discussed below, the parties dispute the scope of this clause and whether Wiley may rely upon it in this case.

### d.  The Costa Rica 2011 Publications

Plaintiff claims that, on or about November 9, 2010, Wiley reproduced the Five Photographs in a publication entitled *Frommer's Costa Rica 2011* (the "Costa Rica 2011 Book") (Am. Compl. at ¶¶ 59-64), and that, on other dates in 2010, Wiley further published these photographs in international, "Kindle eBook," "electronic-mobile ('EMOBI'), electronic-PDF ('EPDF')," and "electronic-publication ('EPUB')" editions of the Costa Rica 2011 Book. According to Plaintiff, Wiley had neither a license to publish the Five Photographs in these 2011 publications, nor Plaintiff's permission to do so.  (*Id.* at ¶¶ 68-72.)

### e.  Donnelley and John Does 1-10

Plaintiff claims that Wiley engaged both Donnelley and the John Doe Defendants to print and produce the aforementioned infringing publications (*id.* at ¶¶ 14, 16, 126), and that those defendants thereby also infringed Plaintiff's copyright in the Five Photographs.

### 2.  Wiley's Alleged Fraud

Plaintiff alleges that, both before and during Wiley's negotiations with him to obtain a license to publish the Five Photographs in the Costa Rica 2010 Book, Wiley failed to disclose that it had already reproduced these photographs in distributed copies of that book.  (*Id.* at ¶¶ 45-47.)  Plaintiff further alleges that, during these negotiations, Wiley was aware that it planned to commit all of the infringing acts described in the Amended Complaint, but intentionally concealed its plans.  (*Id.* at ¶¶ 131-45, 154-67.)  According to Plaintiff, Wiley concealed this information in order to obtain a better licensing price for publishing the Five Photographs.  (*Id.* at ¶136.)  Plaintiff contends that, if Wiley had timely disclosed this information to him, he would

not have entered into any "subsequent" license agreement with Wiley with respect to the Five

Photographs (*id.* at ¶ 50) – in other words, Plaintiff contends that, had he known of Wiley's past

conduct and future intentions, he would not have entered into the License Agreement.

Moreover, Plaintiff alleges that, on or about February 25, 2011, Wiley's employee

Ensley Eikenberg ("Eikenberg") admitted to Plaintiff that Wiley had infringed Plaintiff's

copyright in the Five Photographs (*id.* at ¶¶ 78-79), but also provided Plaintiff with "misleading

and false information" regarding Wiley's publication of the Five Photographs in the Costa Rica

books (*id.* at ¶ 80). These allegations, along with Plaintiff's allegation that he "suffered damages

as a result of Wiley's fraud" (*id.* at ¶ 146), form the principal basis for his fraud claims against

Wiley.

### 3.   Wiley's Alleged Infringement of Plaintiff's Copyrights in Photographs Obtained by Wiley from Stock Photography Agencies

According to Plaintiff, in addition to licensing his photographs directly to publishing

companies such as Wiley, he also licenses his photographs to such companies indirectly, through

stock-photography licensing agencies. (*Id.* at ¶¶ 89, 94, 98.) Plaintiff alleges that he has

registered copyrights in the photographs he supplies to such agencies, and that he is the sole

owner of those copyrights. (*Id.* at 102-03.) He also alleges that he "is the direct and intended

beneficiary of all license agreements between Wiley and his licensing agents that pertain to the

use of all such photographs" (*id.* at ¶ 104), and that he "receives benefits under the license

agreements between Wiley and his licensing agents that pertain to the use of [his] photographs,

including the payment of license fees and the provisions regarding the terms of use of his

images" (*id.* at ¶ 103). Plaintiff claims that Wiley infringed his copyrights in photographs that

he provided to three stock-photography licensing agencies, in particular:  Visuals Unlimited,

Getty Images, Inc. ("Getty"), and Corbis Corporation ("Corbis") (collectively, the "Stock Photography Agencies").

These claims appear to be based on assumptions made by Plaintiff upon learning that others (including stock photography agencies) have also asserted claims against Wiley, in other litigation.  Plaintiff suggests in his Amended Complaint that the existence of this other litigation and "[e]vidence submitted to the courts in those [other] actions demonstrates that Defendant Wiley has engaged in a systematic pattern of fraud and copyright infringement."  (*Id*. at ¶¶ 108-09.)  Plaintiff also alleges that, in one of those other cases, "Wiley admitted that it used multiple photographs" of a particular photographer "in numerous publications without permission or a license."  (*Id*. at ¶ 110; *see also id.* at ¶¶ 11-12.)

To the extent Plaintiff accuses Wiley of infringing his copyrights in photographs he had supplied to Visuals Unlimited, Plaintiff appears to base his claim on the fact that, in another action against Wiley, brought by another plaintiff in the District of Arizona, Wiley admitted that it had exceeded the scope of its licenses to use certain photographs that it had obtained from Visuals Unlimited.  (*Id.* at ¶ 87.)  Plaintiff alleges that Visuals Unlimited licensed many of his photographs to textbook publishers, including Wiley.  (*Id.* at ¶ 90.)  From this, Plaintiff appears to assume that Wiley must not only have obtained access to some of his photographs from Visuals Unlimited, but must have also exceeded any uses permitted by any acquired licenses, by publishing his photographs in some of the 40 publications that were identified in that Arizona case as containing unlicensed photographs.  (*Id.* at ¶ 91.)  As discussed further below, however, Plaintiff does not identify any specific photographs of his that were published by Wiley, without permission, in any specific publications referenced in the Arizona case.

9

Plaintiff similarly claims that both Getty and Corbis licensed many of his photographs to textbook publishers, including Wiley.  (*Id.* at ¶¶ 95, 99.)  According to Plaintiff, "a reasonable opportunity for further investigation and discovery will reveal evidence that Defendant Wiley made unauthorized uses of his images" that it obtained from each of these two stock photography agencies.  (*Id.* at ¶¶ 96-100.)

### B.   <u>Procedural History</u>

On March 25, 2011, Plaintiff filed a Complaint against Wiley, seeking injunctive relief and monetary damages related to Wiley's alleged infringement of Plaintiff's copyrights in the Five Photographs.  (Complaint, dated Mar. 25, 2011 (Dkt. 1).)  Plaintiff filed an Amended Complaint on September 29, 2011, adding Donnelley and John Does 1-10 as defendants to Plaintiff's original infringement claims, adding fraud claims against Wiley, and also adding copyright infringement claims against Wiley for alleged infringement of Plaintiff's copyrights in photographs that Plaintiff supplied to the Stock Photography Agencies.  (*See* Am. Compl.)  In his Amended Complaint, Plaintiff seeks, *inter alia*, (1) a preliminary and permanent injunction against all defendants precluding them from further infringing Plaintiff's copyrights in the Five Photographs and the photographs he supplied to the Stock Photography Agencies; (2) all allowable damages under the Copyright Act; (3) unspecified monetary damages for Wiley's allegedly fraudulent procurement of a license to publish the Five Photographs and fraudulent conduct that occurred after Plaintiff granted Wiley that license; and (4) the full costs that Plaintiff has incurred in pursuing and litigating this matter.  (*Id.* at 23, ¶ 1.)

On October 17, 2011, after the parties had already commenced and engaged in a fair amount of discovery, Defendants filed their motion to dismiss the Amended Complaint.  In their motion, Defendants argue that Plaintiff's infringement claims regarding the Five Photographs

are subject to arbitration under the License Agreement, that Plaintiff's copyright claims regarding the photographs he supplied to the Stock Photography Agencies are overly vague and insufficient to satisfy the pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure, and that Plaintiff's fraud claims should be dismissed both because they fail to state with particularity the circumstances constituting Wiley's allegedly fraudulent conduct and thus fail to meet the pleading requirements of Rule 9(b), and because Plaintiff's fraud allegations fail to state a claim under Rule 12(b)(6).  (*See* Memorandum of Law in Support of Motion to Dismiss, dated Oct. 17, 2011 ("Def. Mem.") (Dkt. 29), at 4-5.)  On October 31, 2011, Plaintiff filed an opposition to Defendants' motion.  (*See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, dated Oct. 31, 2011 ("Pl. Mem.") (Dkt. 37).)  Defendants filed a reply memorandum on November 10, 2011.  (*See* Reply Memorandum in Support of Motion to Dismiss, dated Nov. 10, 2011 ("Def. Reply") (Dkt.  41).)

## DISCUSSION

## I.    APPLICABLE LEGAL STANDARDS

### A.    Rule 8(a)

Rule 8(a) of the Federal Rules of Civil Procedure requires that a pleading consist of "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A pleading "does not have to set out in detail the facts in which the claim for relief is based, but must give the court and the defendant fair notice of what [the] plaintiff's claim is and the grounds upon which it rests." *Owens v. Suter,* 02 Civ. 8198 (SHS), 2003 U.S. Dist. LEXIS 3388, at *2-3 (S.D.N.Y. Mar. 7, 2003) (internal citations and quotations omitted).  The statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to

11

answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).  Failure to comply with this requirement may warrant dismissal of the complaint in its entirety.  *Id.* Generally, however, when a court dismisses a complaint for failure to comply with Rule 8, the dismissal should be without prejudice to replead.  *See id.* at 42-43 ("When a court chooses to dismiss [for failure to comply with Rule 8], it normally grants leave to file an amended pleading that conforms to the requirements of Rule 8.").

### B.    Rule 9(b)

Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, a plaintiff who alleges fraud "must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "[I]n order to comply with Rule 9(b), 'the complaint must:  (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

### C.    Rule 12(b)(6)

A case is subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure where the complaint is not legally sufficient to state a claim upon which relief can be granted. *See Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991).  In deciding a Rule 12(b)(6) motion, the Court "accept[s] as true all factual statements alleged in the complaint and draw[s] all reasonable inferences in favor of the non-moving party."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (citation omitted); *accord Jaghory v. New York State Dep't of Ed.*, 131 F.3d 326, 329 (2d Cir. 1997).  A court should grant dismissal where, after considering plaintiffs' allegations in this generous light, "it appears beyond doubt that the plaintiff can prove

no set of facts in support of his claim which would entitle him to relief." *Walker v. City of New York*, 974 F.2d 293, 298 (2d Cir. 1992).  At the same time, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney & Squire*, LLP, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted).  Rather, in order to withstand a motion to dismiss, a complaint must plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007); *see also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (A pleader is obliged "to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible.").

On a motion to dismiss a complaint, the Court considers:  (1) the factual allegations in the complaint; (2) documents attached to the complaint as exhibits or incorporated therein by reference; (3) matters of which judicial notice may be taken; and (4) documents that are "integral" to the complaint.  *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (citing *Brass v. American Films Technologies*, 987 F.2d 142, 150 (2d Cir. 1993); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)); *see also supra* at n.2.

## D.   The Federal Arbitration Act

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, which governs the enforceability of arbitration clauses, enunciates "a strong federal policy favoring arbitration as an alternative means of dispute resolution."  *JLM Indus., Inc. v. Stolt–Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004).  Under the FAA, federal courts must "uphold and enforce 'privately made agreements to arbitrate' as they would any other contract."  *Cole v. Pearson Educ., Inc.*, No. 10 Civ. 7523 (JFK) (RLE), 2011 WL 4483760, at *1 (S.D.N.Y. Sept. 28, 2011) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985)).  Once a court determines that the parties

before it have entered into an agreement to arbitrate certain presented claims, the court must either (1) "stay [the] action that is subject to arbitration until the arbitration is complete," *Borrero v. Ruppert Housing Co., Inc.*, No. 08 CV 5869 (HB) 2009 WL 1748060, at *2 (S.D.N.Y. June 19, 2009), or "'dismiss – rather than stay – an action when *all* of the issues in it must be arbitrated,'" *Id.* (quoting *Milgrim v. Backroads, Inc.*, 142 F. Supp. 2d 471, 476 (S.D.N.Y. 2001)).[4]

## II. PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIMS AGAINST WILEY AND DONNELLEY

### A. Claims Against Wiley, Relating to the Five Photographs Published in Wiley's Costa Rica 2010 and 2011 Books

Wiley moves to dismiss all of Plaintiff's infringement claims against it that relate to the Five Photographs, on the ground that those claims are subject to arbitration under the License Agreement. Plaintiff responds by arguing (a) that Wiley has waived the right to arbitrate Plaintiff's infringement claims, and (b) that, in any event, such claims fall outside the scope of the arbitration clause. For the reasons discussed below, Plaintiff's arguments cannot stand, and these claims are appropriately dismissed, without prejudice, in favor of arbitration.

---

[4] "The determination of whether to dismiss or stay a claim governed by an arbitration clause depends on whether any 'useful purpose will be served by granting a stay of [the] proceedings.'" *Pearson*, 2011 WL 4483760, at *5 (quoting *Berger v. Cantor Fitzgerald Secs.*, 967 F. Supp. 91, 96 (S.D.N.Y. 1997)). "A stay issued pursuant to Section 3 of the FAA must last 'until such arbitration has been had in accordance with the terms of the agreement,' but a stay may be vacated by a party's 'default in proceeding with such arbitration.'" *Id.* (quoting 9 U.S.C. § 3).

1.      **Wiley's Alleged Waiver of the Right To Arbitrate**

Plaintiff primarily argues that, by litigating this case for a period of time, Wiley has waived its right to arbitrate Plaintiff's copyright infringement claims.  (Pl. Mem., at 19.)  There is, however, "a strong presumption in favor of arbitration and that waiver of the right to arbitration is not to be lightly inferred."  *Coca-Cola Bottling Co. v. Soft Drink & Brewery Workers Union Local 812, Int'l Bhd. of Teamsters*, 242 F.3d 52, 57 (2d Cir. N.Y. 2001) (internal quotation marks and citation omitted).  Accordingly, "any doubts concerning whether there has been a waiver are resolved in favor of arbitration."  *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995) (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).  District courts determine waiver by examining the facts of the particular case and do not necessarily follow bright-line rules.  *Id.* (citing *Cotton*, 4 F.3d at 179).  "Generally, waiver is more likely to be found the longer the litigation goes on, the more a party avails itself of the opportunity to litigate, and the more that party's litigation results in prejudice to the opposing party."  *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir. 2002) (citing *Leadertex*, 67 F.3d at 25).

On the facts presented here, the Court concludes that Wiley has not waived its right to arbitrate Plaintiff's claims for copyright infringement of the Five Photographs.  Although the parties in this case have engaged in discovery, participated in telephone conferences with the Court, and argued an issue related to a protective order, these activities, neither individually nor collectively, equate to the type of protracted litigation that should result in a waiver, especially in the absence of a showing of meaningful prejudice to Plaintiff.  *See Com-Tech Assocs. v. Computer Assocs. Int'l, Inc.*, 938 F.2d 1574, 1576-77 (2d Cir. 1991) (holding that defendants had waived arbitration claim by engaging in protracted litigation that, *inter alia*, forced plaintiffs

to litigate arbitrable issues); *see also ITT World Communications, Inc. v. Communications Workers of America*, 422 F.2d 77, 83 (2d Cir. 1970) (stating that, in this circuit, a party who merely files an answer or waits several months to seek arbitration does not waive its right to arbitrate "in the absence of prejudice to the opposing party"); *Thyssen*, 310 F.3d at 105 (stating that waiver is found only in cases where the plaintiff has demonstrated substantive prejudice).

Plaintiff has not made any showing as to how the proceedings that have been conducted in this case thus far have caused it prejudice.  The discovery obtained by the parties could likely be usable in an arbitration proceeding, and, although the litigation has moved forward for some time, the Court has not had occasion to consider the merits of any claims that could be subject to arbitration.  Moreover, the Court notes that Plaintiff has presumably been well aware, from at least the date that he filed his Amended Complaint, that there was a strong likelihood that it would be dismissed in favor of arbitration, given that he had filed two extremely similar cases in this Court, involving identically-worded arbitration clauses and similar facts, and that both cases were dismissed, in whole or in part, so that Plaintiff's claims could be arbitrated.  *See Cole v. Pearson Educ., Inc.*, No. 10 Civ. 7523 (JFK) (RLE), 2011 WL 4483760 (S.D.N.Y. Sept. 28, 2011); *Cole v. Houghton Mifflin Harcourt Publishing Company*, No. 10 Civ. 9502 (DLC) (unpublished Order, dated Mar. 17, 2011).[5]  In fact, Plaintiff filed his Amended Complaint in this case one day after the Court issued its decision in the *Pearson* case, rejecting arguments raised by Plaintiff that were nearly identical to the arguments Plaintiff raises here.

---

[5] The arbitration clauses at issue in these other cases, which, as noted above, are identical to the clause at issue here, can be found in the Declaration of Ezra D. Church in Support of Defendant's Motion To Dismiss Plaintiff's Complaint, (filed as Dkt. 7 in *Pearson*), Ex. A at ¶ 9, and in the Declaration of J. Russell Jackson in Support of Defendant's Motion to Dismiss the Complaint (filed as Dkt. 8 in *Houghton Mifflin*), Ex. A at ¶ 9.

Under these circumstances, Plaintiff cannot be found to have rebutted the "'strong presumption in favor of arbitration'" of his infringement claims against Wiley. *Coca-Cola Bottling Co.,* 242 F.3d at 57 (quoting *Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993)).

### 2.   Scope of the Arbitration Clause

Other than arguing that Wiley has waived its right to arbitrate, Plaintiff offers no other arguments directed to the validity or enforceability of the parties' arbitration agreement.[6] Instead, as a fall-back argument as to why his claims should remain in this Court, Plaintiff argues that his infringement claims relating to the Five Photographs fall outside the scope of the arbitration clause.  (Pl. Mem., at 22-25.)  "The determination of whether any issues in this action are subject to the arbitration clause depends on the parties' intent when forming the license agreement, as reflected in the language of the [arbitration clause]."  *Pearson*, 2011 WL 4483760, at *6 (citing *Desktop Images, Inc. v. Ames*, 929 F. Supp. 1339, 1345 (D. Colo. 1996)).  In this case, the arbitration clause at issue is broad, as it states that "[a]ny dispute in connection with [the License Agreement]" is subject to arbitration, including disputes regarding the agreement's "validity, interpretation, performance, or breach."  (License Agreement at ¶ 9.)  Where an arbitration clause in a copyright license agreement requires the parties to arbitrate "any" claim or dispute relating to or arising "in connection with" the parties' agreement, such a clause should be interpreted to require arbitration of copyright claims relating to the licensed works.  *See Pearson*, 2011 WL 4483760, at *6 (citing *Kamakazi Music Corp. v. Robbins Music Corp.*, 684 F.2d 228, 229 (2d Cir. 1982)); *see also North River Ins. Co. v. Allstate Ins. Co.*, 866 F. Supp. 123, 127

---

[6] Although Plaintiff has not raised the issue, the Court notes that Plaintiff's claim that he was fraudulently induced into entering into the License Agreement (Am. Compl. at ¶ 50) would not call into question the viability of the arbitration clause contained in that agreement, given that Plaintiff's fraud claim is directed to the License Agreement as a whole, not the arbitration clause, *see Pearson,* 2011 WL 4483760, at *5.

(S.D.N.Y. 1994) (stating that "the use of the term '*any*' [in an arbitration clause] makes it clear that the parties intended the clause to be broad" (emphasis added)).

Here, Plaintiff makes three arguments as to why his claims should not be considered within the scope of the arbitration clause.  First, advancing the same type of analysis that the Court found unpersuasive in *Pearson,* Plaintiff argues that his copyright infringement claims regarding Wiley's reproduction of the Five Photographs in the Costa Rica 2011 publications are not subject to arbitration because, although those photographs were the subject of the License Agreement (which referenced the Costa Rica 2010 publications), there was no further agreement between the parties that specifically referenced the 2011 publications.  (Pl. Mem., at 23-24.)  In *Pearson,* the court reasoned that, because, at some point in time, the defendant had "licensed all of the works claimed by the Plaintiff to have been infringed," it was fair to conclude that "any dispute about the publication of the licensed photographs [was] a 'dispute in connection' with the license agreements," *Pearson*, 2011 WL 4483760, at *6, and thus within the scope of the arbitration clause contained within those agreements, *id.*  On that basis, the Court dismissed, in favor of arbitration, all of Plaintiff's copyright claims regarding the licensed works.  *See id.* at *6-7.  Similarly, in this case, Plaintiff and Wiley entered into the License Agreement, which granted Wiley a limited license to publish the Five Photographs.  (*See* License Agreement.) Plaintiff claims that, by proceeding to publish those photographs in publications outside the limitations set forth in the License Agreement (including in the Costa Rica 2011 publications), Wiley infringed his copyrights.  Any such infringement claim is appropriately characterized as a "dispute in connection with" the License Agreement, which states that "[a]dditional use of any kind whatsoever" of the Five Photographs would require "an additional licensing fee."  (*Id.*; *see*

*also Pearson*, 2011 WL 4483760, at *6.)  Accordingly, such claims fall within the scope of the parties' arbitration agreement.

For his second argument, which is also similar to an argument he raised in *Pearson*, Plaintiff contends that his copyright infringement claims regarding Wiley's unlicensed publication of the Five Photographs in certain Costa Rica 2010 publications should not be seen as arising out of, or in connection with, the License Agreement, but, rather, should be seen as arising out of Wiley's alleged breach of the Delivery Memo, which preceded the License Agreement and contained no arbitration provision.  (Pl. Mem., at 24-25.)  The flaw in this argument is that it ignores the fact that Plaintiff, the drafter of the License Agreement, stated in that agreement:  "Both parties agree that the following terms and conditions [of the License Agreement] embody all of the understandings and obligations between the parties hereto." (License Agreement.)  Based on this unambiguous language, the License Agreement must be read to have incorporated or superceded any prior understandings of the parties, and thus Plaintiff's attempt to focus on the Delivery Memo in order to avoid arbitration is unavailing.  *See Pearson*, 2011 WL 4483760, at *6 (holding that Plaintiff's "late permissioning" copyright infringement claims were within the scope of the arbitration clause).

Finally, Plaintiff highlights the portion of the arbitration clause that states that "'[a]ny dispute involving $1500.00 or less may be submitted, without arbitration, to any Court having jurisdiction thereof.'"  (Pl. Mem., at 25 (quoting License Agreement at ¶ 9).)  Plaintiff argues that, as each of his separate claims for copyright infringement of the Five Photographs does not individually meet the $1500 threshold for mandatory arbitration, these claims cannot be considered to fall within the scope of the arbitration clause.  (*See* Pl. Mem., at 25 (arguing that, "because the invoiced fee was $1100, claims related to that invoice are not subject to

arbitration").)  Based on the plain text of the arbitration provision, however, the $1500 threshold relates to the *dispute*, not the invoice fee.  Plaintiff has charged Wiley with multiple acts of infringement with respect to its allegedly unauthorized uses of the Five Photographs, and, although Plaintiff has not stated an overall damages demand, it is the Court's understanding that he is certainly not seeking less than $1500 in total damages on claims that, if successful, could result in an award of statutory damages and/or disgorgement of profits well in excess of that sum.  For this reason, the Court finds that Plaintiff's claims against Wiley for infringement of Plaintiff's copyrights in the Five Photographs represent a dispute that involves more than $1500 in potential damages and that falls within the scope of the arbitration clause.

For all of these reasons, the Court concludes that Plaintiff's infringement claims against Wiley regarding the Five Photographs are covered by the parties' arbitration agreement, that Wiley's right to arbitration has not been waived, and that the claims should be dismissed in favor of arbitration.[7]

### B. Claims Against Wiley Relating to Photographs That Wiley Obtained from Stock Photography Agencies

Wiley challenges the sufficiency of Plaintiff's newly-alleged claims that it also infringed Plaintiff's copyrights in certain photographs (the "Stock Agency Photographs") that Wiley purportedly obtained from the Stock Photograph Agencies – Visuals Unlimited, Getty, and Corbis.  To satisfy Rule 8(a), "[a] properly plead[ed] copyright infringement claim must allege (1) which specific original works are the subject of the copyright claim, (2) that plaintiff owns the copyrights in those works, (3) that the copyrights have been registered in accordance with the

_____

[7] A stay of these proceedings, in lieu of dismissal, would not be appropriate here (*see supra* at 13 and n.4), given that, for the reasons discussed below, Plaintiff's only remaining claims are also subject to dismissal, on other grounds.

statute, and (4) by what acts during what time the defendant infringed the copyright." *Kelly v. L.L. Cool J.,* 145 F.R.D. 32, 36 (S.D.N.Y. 1992), *aff'd without opinion*, 23 F.3d 398 (2d Cir. 1994).  For the reasons that follow, the Court finds that, even if Plaintiff owns registered copyrights in each of the photographs he supplied to the Stock Photograph Agencies, he has failed to meet the first and fourth of the requirements set out in *Kelly*, and his new claims, as pleaded, are therefore defective under Rule 8(a).

### 1.     <u>The Requirement of Pleading "Specific Original Works"</u>

A first, critical flaw in Plaintiff's infringement claims relating to Wiley's purported use of photographs obtained from the Stock Photograph Agencies is that these claims do not sufficiently specify the works that are the subject of Plaintiff's claims.

As to Visuals Unlimited, Plaintiff has provided the Court with a four-page chart, which lists 66 photographs that Plaintiff licensed through Visuals Unlimited to textbook publishers, including Wiley.  (*See* Am. Compl. Ex. 3.)  Plaintiff, however, neither alleges that Wiley infringed his copyright in every photograph listed, nor alleges that Wiley infringed his copyright in any specific photograph on the list.  Rather, Plaintiff asks the Court to make an inferential leap and conclude that, because Wiley allegedly obtained access to the 66 photographs listed in the chart and published certain of these photographs in some of the 40 publications that were identified in another action as containing unlicensed photographs, Wiley is likely to have infringed his rights in at least one of these 66 photographs.  (*See* Am. Compl. at ¶¶ 87-92.) Plaintiff, however, does not specifically identify even one of these 66 photographs as being the subject of his copyright infringement claims.  In addition, Plaintiff alleges that "Wiley's . . . infringing . . . of Plaintiff's images is not limited to the photographic works identified herein[]" (*Id.* at ¶ 115), but Plaintiff does not set forth any other works at issue.

As to Getty, Plaintiff has provided a two-page spreadsheet that lists the photographs that he licensed, through Getty, to textbook publishers, including Wiley.  (*See id.* Ex. 4.)  Once again, however, Plaintiff does not specify which of these photographs are the subject of his copyright infringement claims.  Instead, Plaintiff merely claims that "[u]pon information and belief, a reasonable opportunity for further investigation and discovery will reveal evidence that Defendant Wiley made unauthorized uses of his images that it obtained from Getty Images."

Finally, as to Corbis, Plaintiff identifies two photographs that Wiley licensed through Corbis.  (*See* Am. Compl. at ¶ 99; *see also id.* Ex. 5 (listing two photographs owned and created by Plaintiff that Corbis licensed to Wiley).)  Yet, while Plaintiff alleges that Wiley infringed his copyright in each of these photographs (*id.* at ¶ 100), he also contends that "a reasonable opportunity for further investigation and discovery will yield evidence that Wiley's . . . infringing . . . of Plaintiff's images is not limited to the photographic works identified herein" (*id*. at. ¶ 115).

Courts have repeatedly rejected the use of the type of conclusory and vague allegations pleaded by Plaintiff as a substitute for allegations that specify the original works that are the subject of a copyright claim.  *See Cole v. Allen*, 3 F.R.D. 236, 237 (S.D.N.Y. 1942) (holding that plaintiff's allegations that defendant copied unspecified episodes, characters and dialogues from any of six books lacked sufficient specificity); *Plunket v. Doyle*, No. 99 Civ. 11006 (KMW), 2001 WL 175252, at *4 (S.D.N.Y. Feb. 22, 2001) (holding that plaintiff failed to specify which original works were the subject of her copyright claims where she provided a multi-page schedule of certain works, with copyright registration numbers for nine of those works, but also contended in her complaint that her copyright claims were not limited to those works (citing *Cole*)); *DiMaggio v. Int'l Sports Ltd.*, No. 97 Civ. 7767 (HB), 1998 WL 549690, at *2 (S.D.N.Y.

Aug. 31, 1998) (concluding that plaintiff failed to specify which original works were the subject of the copyright claim, where plaintiff merely referred to "nebulous multiple images" (citing *Cole*)).  Not only is it inadequate to base an infringement claim on overly-inclusive lists of copyrighted works, but it is also insufficient to list certain works that are the subject of an infringement claim, and then allege that the claim is also intended to cover other, unidentified works.  *See Plunket*, 2001 WL 175252, at *4.

As each of Plaintiff's infringement claims concerning photographs supplied to the Stock Photography Agencies contains vague and expansive allegations regarding which works are the subject of Plaintiff's claims, the Court finds that Plaintiff has not satisfied the first requirement necessary to render his pleading sufficient.

### 2.      The Requirement of Pleading Infringement "By What Acts During What Time"

Plaintiff's allegations are also deficient because they do not include any statement of "by what acts during what time the defendant[s] infringed [Plaintiff's] copyright" in any Stock Agency Photographs.  *Kelly*, 145 F.R.D. at 36.

As explained above, Plaintiff alleges that Wiley obtained access to Plaintiff's photographs through Visuals Unlimited and published certain of these photographs in some of the 40 publications that were identified in another case as containing unlicensed photographs. (*See* Am. Compl. at ¶ 91.)  This allegation contains no detail as to any claimed infringing "acts," and is therefore insufficient.  *See, e.g., Lindsay v. R.M.S. Titanic*, 52 U.S.P.Q.2d 1609, 1612 (S.D.N.Y. 1999) (requiring that "infringing acts be set out with some specificity," and dismissing copyright claim as a matter of law where plaintiff merely alleged that defendant "'knowingly and willfully infringe[d] upon Plaintiff's copyright . . . by unlawfully purchasing

23

and/or otherwise obtaining copies of the Subject Work' and [that defendant] has and will

'exploit and profit from the Subject Work'"); *Lennon v. Seaman*, No. 99 Civ. 2664 (LBS), 2002

WL 109525, at *6 (S.D.N.Y. Jan. 28, 2002) (holding that defendant did not adequately identify

"by what acts" and "at what time plaintiff infringed his copyright," where defendant alleged that

plaintiff infringed 374 photographs "by copying, publishing, distributing, selling and transferring

the Photographs" (citing *Reid v. Am. Soc. of Composers, Authors and Publishers*, No. 92 Civ.

270 (SWK), 1994 WL 3409, at *2-3 (S.D.N.Y. Jan. 5, 1994))).  Furthermore, Plaintiff's

allegations are inadequate because Plaintiff fails to identify the time period during which any

infringing acts occurred.  *See Lennon,* 2002 WL 109525, at *6; *see also Calloway v. Marvel

Entertainment Group*, No. 82 Civ. 8697, 1983 WL 1141, at *3 (S.D.N.Y. June 30, 1983)

(dismissing plaintiff's claims for failure to comply with the requirements of Rule 8(a), where the

complaint failed, *inter alia*, to specify the dates on which the alleged infringements occurred).

The same defects are apparent in Plaintiff's claims regarding photographs purportedly

licensed to Wiley through Getty and Corbis.  As to Getty, Plaintiff merely asserts that, "[u]pon

information and belief, a reasonable opportunity for further investigation and discovery will

reveal evidence that Defendant Wiley made unauthorized uses of his images that it obtained

from Getty Images" (Am. Compl. at ¶ 96), and that "[f]urther investigation and discovery is

necessary to confirm the complete number of Plaintiff Cole's photographs that Defendant Wiley

obtained from Getty Images and the full scope of Defendant Wiley's infringing use of those

photographs" (*id.* at ¶ 97).  Plaintiff makes substantively identical assertions as to Corbis.  (*Id.* at

¶¶ 100, 101.)  Such conclusory allegations fail to allege "by what acts" Wiley infringed

Plaintiff's copyrights in any photographs, *see Lindsay*, 52 U.S.P.Q.2d at 1612, and also fail to

allege "during what time" Wiley infringed Plaintiff's copyrights in those photographs, *see Calloway*, 1983 WL 1141, at *3.

As Plaintiff has failed to satisfy at least two of the requirements for pleading copyright infringement claims regarding the photographs he supplied to the Stock Photography Agencies, *see Kelly*, 145 F.R.D. at 36, these claims are hereby dismissed, *see DiMaggio*, 1998 WL 549690, at *1-2 (dismissing copyright infringement claim for failure to comply with the requirements of Rule 8(a), where plaintiff failed to specify what specific images were infringed (the first requirement set out in *Kelly*), failed to allege with sufficient clarity that the copyrights in the images were registered pursuant to statutory requirements (the third requirement set out in *Kelly*), and failed to allege by what acts and during what time defendant had infringed the copyrights (the fourth requirement set out in *Kelly*)).[5]

### C. **Infringement Claims Against Donnelley**

Plaintiff's asserted claims against Donnelley relate only to the alleged infringement of Plaintiff's copyrights in the Five Photographs that were published in the Costa Rica publications (*see* Am. Compl. at ¶ 121) – claims that, as to Wiley, are subject to arbitration (*see* Discussion *supra* at Section IIA).  In the papers submitted to the Court, no party has addressed the question of whether the infringement claims against Donnelley are similarly arbitrable, given that this defendant was not a direct party to the License Agreement and, thus, to the arbitration agreement contained therein.

---

[5] It should be noted that the parties have not provided the Court with any license agreements under which the Stock Photography Agencies may have provided Plaintiff's photographs to Wiley.  The Court thus cannot determine, at this point, whether Plaintiff's claims regarding any such photographs may also be subject to arbitration.

As Donnelley was not identified in the License Agreement as Wiley's agent,[6] the question of Donnelley's right to arbitrate Plaintiff's claims against it would typically be viewed as turning on whether, under all of the circumstances presented, Plaintiff could be estopped from resisting arbitration of those claims.  More specifically, the issue is generally framed in terms of whether a "signatory" to an arbitration agreement may be estopped from resisting arbitration sought by a "non-signatory" to the agreement.[7]  Although, in this case, the License Agreement was not signed by either Plaintiff or Wiley, those parties do not dispute that they entered into the agreement memorialized by that document.  The question, then, is whether there is a sufficiently "tight relatedness" of Wiley and Donnelley and of the "contacts and controversies" that give rise to Plaintiff's claims against them, that Plaintiff should be held to be estopped from arguing that his claims against Donnelley cannot be arbitrated.  *Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, 271 F.3d 403, 406-07 (2d Cir. 2001).

Given the integral relationship between the merits of Plaintiff's claims against Wiley and of his claims against Donnelley, and given the fact that Plaintiff has not sought to distinguish between these two defendants in terms of their rights to invoke the arbitration clause, this Court would be inclined to hold Plaintiff estopped from making such distinctions at this point.  The

---

[6] "[D]isclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement."  *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993).

[7] "[U]nder principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of the relationship among the parties, the contracts they signed . . ., and the issues that had arisen among them discloses that the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed."  *JLM Indus. v. Stolt-Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004) (internal quotation marks and citation omitted); *see also Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration International, Inc.*, 198 F.3d 88, 98 (2d Cir. 1999) (holding that the party attempting to resist arbitration was estopped from doing so because it had treated arguably non-signatory companies and their signatory assignees "as a single unit" in its complaint in a related lawsuit).

Court, however, need not make a determination on the issue of estoppel, as the arbitration clause in the License Agreement is itself broad enough to cover any dispute as to whether Plaintiff's claims against Donnelley should be considered arbitrable. *See Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 209 (2d Cir. 2005) (declining to reach the question of whether the signatories to an arbitration agreement were estopped from avoiding arbitration with a non-signatory, where the arbitration agreement broadly covered issues relating to the "'existence, scope or validity'" of the agreement, and thus "arbitration of the issue of arbitrability [was] appropriate"); *see also Washington v. William Morris Endeavor Entm't, LLC*, 10 Civ. 9647 (PKC) (JCF), 2011 WL 3251504, at *8-9 (S.D.N.Y. July 20, 2011) (analyzing the arbitration agreement and the relationship between the parties, and following *Contec* in concluding that the non-signatory defendants could enforce the terms of the agreement, so as to place before the arbitrator the question of whether the plaintiff was estopped from avoiding arbitration with those defendants).

\* \* \*

In sum, Plaintiff's copyright infringement claims against both Wiley and Donnelley regarding any use of the Five Photographs in any of the Costa Rica publications are dismissed, in favor of arbitration. Plaintiff's separate copyright infringement claims against Wiley regarding any use of photographs obtained by Wiley from the Stock Photography Agencies are also dismissed, for failure to comply with the pleading requirements of Rule 8(a). All of Plaintiff's infringement claims are, however, dismissed without prejudice. As to the claims regarding photographs supplied to Wiley through the Stock Photography Agencies, dismissal without prejudice is warranted, given that the basis for dismissal is the lack of specificity in Plaintiff's pleading, which Plaintiff may, at some point, be able to cure. As to the claims regarding the Five Photographs, Wiley and Donnelley should take appropriate and prompt steps to initiate

27

arbitration, so as not to risk waiver of their right to arbitrate those claims.  If either Wiley or

Donnelley refuses to arbitrate any of the claims that are herein dismissed in favor of arbitration,

Plaintiff may seek leave to reopen this case, so as to litigate the claims in question.

## III.   PLAINTIFF'S FRAUD CLAIMS AGAINST WILEY

### A.   Fraudulent Inducement Claims

Plaintiff alleges that, both before and during Wiley's negotiations with him regarding the

Five Photographs, Wiley fraudulently concealed its unauthorized reproduction of these

photographs, fraudulently concealed its plans to infringe Plaintiffs's copyright in these

photographs, and fraudulently misled Plaintiff as to its intended uses of these photographs.

(Am. Compl. at ¶¶ 131-45, 154-67.)  These allegations amount to a claim that any agreements by

Plaintiff that were set forth in either the Delivery Memo or the later License Agreement were

induced by fraud.  (*See id.* at ¶ 145 (alleging that Wiley's conduct "reasonably deceived Plaintiff

into believing that by duly entering and signing an enforceable licensing agreement, [Plaintiff's]

creative rights would be respected and consideration would be correspondingly applied to any

subsequent uses of his photographs"); *see also Eberle v. BMCA Insulation Products Inc.*, No. 95

Civ. 10378 (SAS), 1996 WL 337262, at *2 (S.D.N.Y. June 19, 1996) (stating that

"[r]espondent's allegations that [p]etitioners fraudulently misrepresented IP's true value, assets,

and compliance with federal environmental legislation . . . amount to a claim that the contract

itself was induced by fraud").)

As noted above, however, the License Agreement, by its terms, superceded any

understandings that may have been set forth in the Delivery Memo.  (*See* License Agreement

(providing that the parties "agree[d] that the . . . terms and conditions [of the License

Agreement] embody all of the understandings and obligations between the parties hereto").)

28

Moreover, as the arbitration clause in the License Agreement covers "[a]ny dispute in connection with" the License Agreement, including any dispute over "its validity" (*id.* at ¶ 9), it must be read to cover any fraud-in-the-inducement claim.

Accordingly, to the extent Plaintiff's fraud claims are related to Wiley's procurement of the Five Photographs, or are based on any conduct by Wiley that led Plaintiff to provide either the Delivery Memo or the License Agreement, those claims fall within the scope of the arbitration clause, and, therefore, should be dismissed in favor of arbitration.

### B.   Additional Fraud-Based Claims

Plaintiff has also asserted fraud claims against Wiley that relate to (1) conduct that occurred *after* the parties entered into the License Agreement (*see e.g.*, Am. Compl. ¶ 135 (alleging, as part of a fraud claim, that a Wiley employee, after the date that appears on the License Agreement, "provided Plaintiff Cole with misleading and false information about Wiley's uses of [the Five Photographs] in the Costa Rica books in an effort to mislead him into compromising his claims")), and (2) Wiley's procurement of Plaintiff's photographs from third parties (*see e.g.*, *id.* ¶ 135 (alleging, as part of his fraud claim, that Wiley "obtained some of Plaintiff Cole's images from third parties without his knowledge or consent and used them without permission")).  These claims are subject to dismissal under both Rule 9(b), based on Plaintiff's failure to plead fraud with the requisite particularity, and Rule 12(b)(6), based on Plaintiff's failure to state a claim upon which relief may be granted under the applicable state law.

First, as to Rule 9(b), Plaintiff's fraud claims relating to Wiley's conduct after the parties entered into the License Agreement are deficient because they rely entirely on the lone allegation that Eikenberg, a Wiley employee, "provided Plaintiff . . . with misleading and false information

about Wiley's uses of his photographs in the Costa Rica books in an effort to mislead him into compromising his claims." (*Id.* at 80.)  This allegation fails to specify the content of Eikenberg's allegedly fraudulent statements, to state where Eikenberg made such statements, or to explain why such statements were fraudulent.  As to allegedly fraudulent conduct related to the photographs that Plaintiff supplied to the Stock Photography Agencies, Plaintiff fails to specify even one fraudulent statement or omission that is attributable to a Wiley employee or agent, and also fails to allege where any purportedly fraudulent conduct took place.  (*See generally* Am. Compl. ¶ 87-116, 129-73.)  Consequently, it would be appropriate for this Court to dismiss these fraud claims under Rule 9(b).  *See Lerner, N.A.*, 459 F.3d 291 (affirming dismissal of fraud claims for failure to comply with requirements of Rule 9(b)).

Second, as to Rule 12(b)(6), Plaintiff's allegations, even if read most favorably to him, are not legally sufficient to state a claim for fraud.  Under New York law,[8] "damages are an essential element of a fraud claim."  *Semerdjian v. McDougal Littell*, No. 07 Civ. 7496 (LMM)*, 2008 WL 110942, at *2 (S.D.N.Y. Jan. 2, 2008) (quoting *Abernathy-Thomas Eng'g Co. v. Pall Corp.*, 103 F. Supp. 2d 582, 599 (E.D.N.Y. June 27, 2000)).  Thus, a plaintiff cannot maintain a fraud claim where the damages attributable to the fraud are "speculative or undeterminable."  *Id.* (quoting *Abernathy-Thomas*, 103 F. Supp. 2d at 599).  Rather, plaintiffs must allege pecuniary

---

[8] Defendants rely exclusively on New York law to challenge the sufficiency of Plaintiff's state-law fraud claims (*see, e.g.,* Def. Mem. at 15), and, while Plaintiff cites some cases from other jurisdictions, he makes no argument that, under choice-of-law principles, these claims should be considered to have arisen under the law of a different state (*see generally* Pl. Mem. at 17-19).  Indeed, neither party offers any choice-of-law analysis, and, in the face of their silence on the issue, "the Court may apply the law of the forum."  *See Global Switching Inc. v. Kasper*, No. CV-06-412 (CPS), 2006 WL 1800001, at *11 n.10 (E.D.N.Y. June 29, 2006) (citing *Michele Pommier Models v. Men Women N.Y. Model Mgmt.*, 14 F. Supp. 2d 331, 336 (S.D.N.Y. 1998)).

losses that are "the direct, immediate, and proximate result of the misrepresentation." *Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir. 1993). Moreover, such losses must be "independent of other causes." *Bennett v. United States Trust Co.*, 770 F.2d 308, 316 (2d Cir. 1985) ("To establish the required causation, the plaintiff must show that the loss was a direct result of the defendant's [fraudulent] actions and [that it was] independent of other causes.").

In this case, with respect to conduct by Wiley subsequent to the License Agreement, and with respect to Defendants' alleged concealment of its improper use of Plaintiff's works obtained from third parties, it is not plausible that Plaintiff's alleged damages would have been either proximately caused by any fraudulent conduct by Wiley, or that the damages would have been sustained independent of other causes. There would have been no unauthorized uses of Plaintiff's works (and, hence, no injury to Plaintiff), had Wiley timely obtained the appropriate licenses and acted in accordance with the terms of each license. Therefore, but for Wiley's infringing conduct, Plaintiff would have suffered no harm from the alleged misrepresentations or concealment. *See Semerdjian*, 2008 WL 110942, at *2-3 (holding that, absent any copyright infringement, defendant would not have exceeded the print run authorized in the contract, and, in such a case, there would be no fraud-related damages). Although Plaintiff cites certain decisions from other jurisdictions that have not accepted the reasoning of *Semerdjian* (*see* Pl. Mem., at 18), this Court does not find those decisions persuasive. Based on *Semerdjian* and the other cases cited above, Plaintiff has pleaded no facts capable of showing that Wiley's alleged fraudulent acts (to the extent separate from those acts that allegedly induced Plaintiff to enter into the Delivery Memo and License Agreement) led to any direct and proximate loss, "independent" of losses that would have been caused by Wiley's claimed copyright infringement. *See Semerdjian*, 2008 WL 110942, at *2-3.

Although Plaintiff might be able to cure the Rule 9(b) pleading defects in these fraud claims, he cannot cure the substantive defects described above, and thus these claims are appropriately dismissed with prejudice, pursuant to Rule 12(b)(6).

## IV.    REMAINING CLAIMS AGAINST THE JOHN DOE DEFENDANTS

There is no indication in the record that the John Doe Defendants have ever been identified or served, and Defendants' counsel does not claim to represent them on the pending motion to dismiss.  Under Rule 4(m) of the Federal Rules of Civil Procedure:

> If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P 4(m).  This Rules applies to "John Doe" defendants, *see, e.g., Kearse v. Lincoln Hosp. (Bronx, N.Y.)*, No. 07 Civ. 4730 (PAC) (JCF), 2009 WL 1706554, at *2 (S.D.N.Y. June 17, 2009), but courts often refrain from dismissing suits against such defendants "until the plaintiff has had some opportunity for discovery to learn the identities of the [unnamed defendants]," *Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998)); *see also Warren v. Goord*, 476 F. Supp. 2d 407, 413-414 (S.D.N.Y. 2007) (declining to dismiss the claim against "John Doe" defendant until plaintiff had engaged in sufficient discovery to name defendant).

Here, well over 120 days have passed since Plaintiff filed his Amended Complaint, in which he referred to the John Doe Defendants as "yet-to-be ascertained printing companies" and stated that "further investigation and discovery" would be necessary to "confirm" their identities. (Am. Compl. at ¶ 5.)  In his effort to defeat arbitration, however, Plaintiff now asserts that the parties have "engaged in extensive document discovery regarding these claims, fully briefed and

argued multiple discovery motions, . . . conducted depositions of the central fact witnesses" (Pl. Mem. at 1), and participated in "litigation that has resolved every aspect of liability related to these publications" (*id.* at 20).  These assertions suggest that Plaintiff has had ample opportunity to learn the identities of those entities he wished to sue in this case.

Accordingly, the Court sees no reason to refrain from dismissing the claims against the John Doe Defendants *sua sponte,* without prejudice, pursuant to Fed. R. Civ. P. 4(m).  *See Kearse*, 2009 WL 1706554, at *2 (adopting magistrate judge's recommendation that plaintiff's claims against "John Doe" physician be dismissed, where, despite having had both time and access to medical records, plaintiff had failed to identify or serve the "John Doe" physician who treated him); *Heicklen v. United States Dep't of Homeland Sec.*, No. 10 Civ. 2239 (RJH) (JLC), 2011 WL 3841543, at *16 (S.D.N.Y. Aug. 30, 2011) (recommending *sua sponte* dismissal of claims against "John and Jane Doe" defendants, where plaintiffs, who were aware of the requirements of Rule 4(m), nonetheless failed to effect timely service of those defendants) (Report and Recommendation), *adopted by* 2011 WL 4442669 (S.D.N.Y. Sep 23, 2011).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to dismiss the Amended Complaint (Dkt. 28) is granted in its entirety, as set forth below:

1. The following claims are dismissed on the ground that they are subject to arbitration under the FAA:

> a. Plaintiff's copyright claims against defendants Wiley and Donnelley, relating to their alleged infringement of Plaintiff's copyrights in the Five Photographs used in the Costa Rica 2010 and 2011 books; and
>
> b. Plaintiff's fraud claims against Wiley, relating either to its procurement of the Five Photographs or to any conduct that allegedly induced Plaintiff either to provide the Delivery Memo or the License Agreement that reference the Five Photographs.

This dismissal is without prejudice to Plaintiff's right to seek to reopen this case, so as to litigate these claims, should Wiley and/or Donnelley refuse to proceed to arbitration.

2. Plaintiff's copyright claims against defendant Wiley, relating to Wiley's alleged infringement of Plaintiff's copyrights in photographs supplied by Plaintiff to the Stock Photography Agencies, are dismissed without prejudice, pursuant to Rule 8(a) of the Federal Rules of Civil Procedure.

3. Plaintiff's fraud claims against defendant Wiley, relating to

> a. any conduct that allegedly occurred after Plaintiff and Wiley entered into the License Agreement, and
>
> b. Wiley's procurement of Plaintiff's photographs from third parties,

are dismissed with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

4.      Plaintiff's copyright infringement claims against the John Doe Defendants are

dismissed, *sua sponte* and without prejudice, pursuant to Rule 4(m) of the Federal Rules of Civil

Procedure.

The Clerk of Court is directed to close this case on the Docket of the Court.

Dated:  New York, New York
       July 31, 2012

SO ORDERED

_____
DEBRA FREEMAN
United States Magistrate Judge

Copies to:

all counsel (via ECF)